UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ESTATE OF JEFFREY H. WARE,                  :
                                            :
                    Plaintiff,              :
            v.                              :        No. 2:14-cv-00014
                                            :
HOSPITAL OF THE UNIVERSITY OF               :
PENNSYLVANIA et al.,                        :
                                            :
                    Defendants.             :
_____

**MEMORANDUM**

**Defendants' Motions to Dismiss and Motion to Strike, ECF Nos. 44 and 45 – Denied**

**Joseph F. Leeson, Jr.**                                    **September 29, 2015**
**United States District Judge**

          Presently before the Court are Defendants' Motions to Dismiss, ECF Nos. 44, 45, and

Defendants' Motion to Strike, ECF No. 45. For the following reasons, the Court will deny

Defendants' motions.

**I.        Background**

          Plaintiff Barbara Boyer filed this action individually and on behalf of the estate of Jeffrey

Ware, a neuroscientist who died in 2011 from gliosarcoma, which is a rare form of malignant

brain cancer. Am. Compl. ¶¶ 1-6. Dr. Ware was a researcher in the radiation oncology

department at Defendant University of Pennsylvania's Perelman School of Medicine, where he

studied the use of protease inhibitors to protect against biological changes caused by radiation

exposure. Am. Compl. ¶¶ 25-27. Dr. Ware became involved in research to study the acute effects

of radiation astronauts may encounter in space, such as "nausea, diarrhea, fatigue, immune

1

system damage and skin injury." <u>See</u> Am. Compl. ¶ 44, 47. This research was funded by a grant from Defendant National Space Biomedical Research Institute ("NSBRI"), which sponsors research related to the needs of the National Aeronautics and Space Administration. Am. Compl. ¶¶ 33, 35. Defendant Ann Kennedy, a radiation scientist at the University of Pennsylvania, was the principal investigator for this study and the Director of Defendant Center of Acute Radiation Research ("CARR"), which was established by the NSBRI grant. Am. Compl. ¶¶ 13, 39, 43. The study involved exposing animals to various dosages of radiation to study the animals' responses to the radiation. Am. Compl. ¶ 44. The NSBRI grant covered certain expenses of the study, but Dr. Ware and other researchers used some equipment and materials, including a cesium irradiator, belonging to Defendant Hospital of the University of Pennsylvania. ¶¶ 47, 50, 52.

Plaintiffs allege that various Defendants failed to provide adequate safety training and protection from radiation to Dr. Ware and other researchers, including training and protection related to Dr. Ware's use of the cesium irradiator to irradiate the animals, and failed to adequately inspect and maintain the equipment the researchers used. <u>See</u> Am. Compl. ¶¶ 58-68. In addition to Dr. Ware, Plaintiff alleges that an investigator and technician who worked with Dr. Ware also died from cancer within two years of Dr. Ware's death, which Plaintiffs attribute to various Defendants wrongfully permitting Dr. Ware and other researchers to be exposed to "extraordinarily high" levels of radiation. <u>See</u> Am. Comp. ¶¶ 69-74.

Plaintiffs further allege that certain Defendants engaged in medical malpractice during the course of treating Dr. Ware after he was diagnosed with gliosarcoma. Plaintiffs allege that physicians at The Hospital of the University of Pennsylvania recommended that Dr. Ware undergo chemotherapy and radiation treatments despite "the advanced stage of his brain cancer and the extremely poor prognosis" and the "complications and devastating side effects" of such

treatments, and that they failed to adequately inform Dr. Ware of the risks and alternatives to such treatments. Am. Compl. ¶¶ 119-21. Plaintiffs further allege that Defendant Michelle Alonso-Basanta, a radiation oncologist at the Perelman Center for Advanced Medicine, enrolled Dr. Ware in an experimental protocol intended "to study the effects of chemotherapy and radiation on brain cancer patients." Am. Compl. ¶¶ 15, 122. The study was directed by Gary Kao, another radiation oncologist at the Perelman Center for Advanced Medicine, whom Plaintiffs allege had been restricted from engaging in certain activities by the Nuclear Regulatory Commission ("NRC") following an investigation into a series of treatment programs Dr. Kao had conducted using radioactive materials.  See Am. Compl. ¶¶ 14, 85-109, 124. Plaintiffs allege that Dr. Ware did not adequately consent to the experimental protocol due to Dr. Ware's diminished cognitive abilities at the time he gave his consent and Defendants' failure to disclose Dr. Kao's involvement in the protocol, the University of Pennsylvania's financial interest in Dr. Kao's research, and the "extreme risks" associated with the treatment.  See Am. Compl. ¶¶ 124, 127-29, 131-32.

Plaintiffs advance two public liability action claims under the Price-Anderson Nuclear Industries Indemnity Act ("Price-Anderson Act"), one claim of fraud against various Defendants affiliated with the University of Pennsylvania, one claim of negligence alleging medical malpractice against Dr. Alonso-Basanta, Dr. Kao, Dr. Kennedy, and the Hospital of the University of Pennsylvania, and one claim of "corporate negligence" against the Hospital of the University of Pennsylvania. Plaintiff Barbara Boyer also advances one claim of negligent infliction of emotional distress. Defendants separately moved to (1) dismiss certain paragraphs and phrases contained in Plaintiffs' claims under the Price-Anderson Nuclear Industries

Indemnity Act, (2) dismiss Plaintiffs' claims of fraud, corporate negligence, and negligent infliction of emotional distress, and (3) strike portions of Plaintiffs' Amended Complaint.

## II.     Legal Standards

## A.     Motion to Dismiss

When rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). While Rule 8 of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock

4

the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing Twombly, 550 U.S. at 555)); see Fed. R. Civ. P. 8(a)(2). For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d 224, 232 (citing Twombly, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555). This is because Rule 8(a)(2) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'" See id., 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Detailed factual allegations" are not required, id. at 678 (quoting Twombly, 550 U.S. at 555), but a claim must be "nudged . . . across the line from conceivable to plausible," id. at 680 (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,'" but there must be "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id.

(quoting Twombly, 550 U.S. at 557). Traditionally, pro se plaintiffs' complaints have been liberally construed, only dismissed if the plaintiff can prove no set of facts to support the claim. See U.S. v. Miller, 197 F.3d 644, 648 (3d. Cir. 1999).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

## B.      Motion to Strike

A court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and are considered a "drastic remedy to be resorted to only when required for the purposes of justice." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quoting N. Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). Thus, the moving party generally must demonstrate that the material "has no possible relation to the controversy and may cause prejudice to one of the parties." Id. at 428-29 (quoting River Rd. Dev. Corp. v. Carlson Corp.-Ne., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)). "Even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." Pennington v. Wells Fargo Bank, N.A., 947 F. Supp. 2d 529, 534 (E.D. Pa. 2013) (quoting XpertUniverse, Inc. v. Cisco Sys., Inc., 868 F.Supp.2d 376, 379 (D. Del. 2012)).

## III.    Defendants' Motions to Dismiss and to Strike are Denied.

## A.      Defendants' Motions to Dismiss portions of Plaintiffs' Price-Anderson Act claims are denied.

The Court, in resolving Plaintiffs' earlier motion to remand this action to state court, determined that Plaintiffs' claims arising out of Dr. Ware's exposure to radiation constituted a

"public liability action" under the Price-Anderson Act, thereby establishing federal jurisdiction over this action. See ECF No. 29 (adopting the report and recommendation of Magistrate Judge Angell). "The term 'public liability action' encompasses 'any legal liability' of 'any person who may be liable on account of a nuclear incident.'" Report and Recommendation 7, ECF No. 20. Once a determination is made that a claim falls within the scope of the Price-Anderson Act, any state law claims arising out of the same occurrence are preempted. See id. ("[T]he consequence of a determination that a particular plaintiff has failed to state a public liability claim potentially compensable under the Price-Anderson Act is that he has no such claim at all. After the [1988 amendments to the Act], no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the [1988 amendments] or it is not compensable at all." (quoting In re TMI Litig. Cases Consol. II, 940 F.2d 832, 854-55 (3d Cir. 1991))). Because the Court determined that these claims present a public liability action, Plaintiffs filed an Amended Complaint replacing their original state law negligence claims with claims under the Price-Anderson Act.

Defendants do not contest that Plaintiffs have asserted valid claims under the Price-Anderson Act. See Mem. Supp. Defs.' Mot. Dismiss 20, ECF No. 44 ("The only [public liability action] cause of action is negligence and the only duty owed is compliance with the numerical regulatory dose limits."). Rather, Defendants argue that Plaintiffs' allegations misstate the legal standard this Court must apply when analyzing a claim under the Price-Anderson Act. However, when evaluating the sufficiency of a complaint, this Court must separate the factual and legal elements of a claim and "may disregard any legal conclusions." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth."). As the United States Supreme Court recently observed, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, 135 S. Ct. 346, 346-47 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)). Rather, once a plaintiff has pleaded facts sufficient to show that her claim has substantive plausibility, she is "required to do no more to stave off threshold dismissal for want of an adequate statement of [her] claim." Id. Therefore, even if Plaintiffs' recitation of the legal standard applicable to their claims is not precisely correct, these statements are not subject to dismissal. See Twombly, 550 U.S. at 562 ("[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.") (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

**B.    Defendants' Motions to Dismiss Plaintiffs' fraud, corporate negligence, and negligent infliction of emotional distress claims are denied.**

Defendants argue that Plaintiffs' state law claims of fraud, corporate negligence, and negligent infliction of emotional distress claims are preempted by the Price-Anderson Act and must be dismissed. See Mem. Supp. Defs.' Mot. Dismiss 19-20, ECF No. 44. Plaintiff's corporate negligence claim, however, appears to relate solely to the alleged medical malpractice committed in treating Dr. Ware after he was diagnosed with cancer. Likewise, Plaintiffs' claims for fraud and negligent infliction of emotional distress appear to embrace the events related to the alleged medical malpractice. Thus, even if Defendants are correct in contending that Plaintiffs cannot base these claims on the events that occurred in connection with Dr. Ware's alleged radiation exposure, this contention does not provide a basis for dismissal of the claims. Accordingly, Defendants' Motions to Dismiss these claims are denied.

**C.      Defendants NSBRI's and CARR's Motion to Strike**

Defendants NSBRI and CARR jointly move this Court to strike the section of Plaintiffs'

Amended Complaint entitled "Introduction" and two photographs embedded into page twenty-

eight of the Amended Complaint.[1] Defendants argue that the Introduction should be stricken for

failing to contain short and plain statements of Plaintiffs' claims and failing to use numbered

paragraphs, and for containing redundant material that appears elsewhere in the Amended

Complaint. Defendants do not present an argument for this Court to strike the embedded

photographs, other than to refer to two district court cases in other circuits in which those courts

granted motions to strike photographs from the respective complaints. See Mem. Supp. Defs.'

Mot. 6-7, ECF No. 45.

Defendants do not allege any risk of confusion or prejudice from either the Introduction

section or the photographs. Instead, Defendants primarily point to the Introduction section's

formatting and redundancy. See Mem. Supp. Defs.' Mot. 5-6. But the failure to use numbered

paragraphs is generally not fatal to portion of a complaint. See, e.g., Shaw v. Russell Trucking

Line, Inc., 542 F. Supp. 776, 781 (W.D. Pa. 1982) (denying a motion to strike a "Preliminary

Statement" that did not contain numbered paragraphs even though such statement "may

constitute a technical violation of Rule 10(b)" where the statement was "sufficiently clear so as

to enable Defendant to effectively formulate a response"). Moreover, courts have generally

declined to "expend time and effort pruning or polishing the pleadings." Zaloga v. Borough of

Moosic, No. 3:10–CV–2604, 2013 WL 1909538, at *6 (M.D. Pa. May 8, 2013) (citing 5C

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d. ed. 2004)).

---

[1]      The Introduction section, which generally sets forth a narrative summary of Plaintiffs' allegations and
contains a photograph of Dr. Ware, spans the first three pages of the Amended Complaint, and the paragraphs
contained in this section are not numbered.

In short, based on Defendants' inability to point to any risk of confusion or prejudice from either the Introduction section or the photographs, Defendants' Motion to Strike is denied.

**IV.     Conclusion**

For the reasons stated above, Defendants' motions to dismiss and to strike are denied. A separate order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge